# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAVID MONTOYA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 C 3628 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| ATKORE INTERNATIONAL, INC., ) | |
| NORMAN MACDONALD, STEVE ROBINS, ) | |
| RODNE BERLIN, SAMI SHEMTOV, and ) | |
| ROBERT PEREIRA, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Plaintiff David Montoya worked for Defendant Atkore International, Inc. ("Atkore") as a Senior Trade Compliance Specialist from July 2012 until Atkore terminated him in December 2015. Montoya then filed this suit alleging that Atkore discriminated and retaliated against him because of his opposition to a violation of law by Atkore (Count I), his national origin (Count II), and his age (Count III) in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. He also alleges that Atkore and Individual Defendants Norman MacDonald, Steve Robins, Rodney Berlin, Sami Shemtov, and Robert Pereira retaliated against him in violation of the Illinois Whistleblower Act ("IWA"), 740 Ill. Comp. Stat. 174/20, when they fired him after he complained about Atkore violating federal customs laws (Count IV). Finally, Montoya brings a claim for Intentional Infliction of Emotional Distress ("IIED") under Illinois common law against all Defendants, alleging that their actions caused him severe emotional distress (Count V). The Individual Defendants move to dismiss [26] the state law claims against them (Counts IV and V), and Atkore moves to dismiss [23] all claims against it except for the Title VII age discrimination claim. Because Title VII does not provide protection from retaliation for employees who report violations of law that are not covered by Title VII, the Court grants the motion to dismiss Count I. Because

Montoya does not allege that he suffered an adverse employment action because of his national origin, the Court grants the motion to dismiss Count II. The Court dismisses Count IV as to all Defendants because Montoya only alleges that he complained to his superiors about the violations of federal law, not that he refused to participate in them or that he reported it to the government before suffering an adverse employment action. Finally, the Court dismisses the IIED claim because Montoya has not alleged conduct on behalf of Defendants that is extreme and outrageous that reasonably could have caused him severe emotional distress.

## BACKGROUND[1]

Montoya is the former Senior Trade Compliance Specialist for Atkore. He held this position from September 2012 until Atkore terminated him in December 2015.

Even before officially joining Atkore, Montoya was responsible for addressing trade compliance issues Atkore had identified with a company it had recently acquired called FlexHead Industries, Inc. ("FlexHead"). When he first started at Atkore, Montoya reported to Defendant Steve Robins through Montoya's direct manager Marianne Hitzel. Shortly after he officially began working at Atkore, Montoya traveled to FlexHead headquarters and met with its president, Defendant Norman MacDonald. MacDonald reacted poorly to Montoya's visit and complained to Atkore's CEO and to Robins, accusing Montoya of some sort of conspiracy relating to customs irregularities Montoya found at FlexHead.

A few weeks later, Atkore received a request for information from Customs and Border Protection ("CBP"). In response to this request, Atkore filed a disclosure of its prior violations and CBP closed that matter.

---

[1] The facts in the background section are taken from the first amended complaint and are presumed true for the purpose of resolving Defendants' motions to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

In April 2014, Hitzel left Atkore. Montoya reported directly to Robins from this time until November 2014, when Atkore hired Defendant Rodney Berlin as the Senior Manager-Corporate Logistics and Trade Compliance. During the period Montoya reported directly to Robins, Robins held weekly mandatory meetings that Montoya attended when he was at Atkore headquarters each month. At some of these meetings Robins made joking and mocking comments about Montoya's accent, and other employees laughed at Montoya.

In April 2014, Montoya conducted the pre-acquisition review of Steel Components, Inc. ("SCI"), a company Atkore was seeking to acquire. Montoya identified several concerns about SCI and reported them to Robins. Robins replied that the issues were not a concern because Atkore was only acquiring the assets of SCI, not the company itself. Montoya objected to this strategy, and advocated that Atkore fix all of the issues with SCI before the acquisition. Atkore rebuffed this suggestion and moved forward with the acquisition of SCI on November 20, 2014.

Following the acquisition, Atkore held weekly meetings to coordinate the integration of SCI into Atkore. During these meetings, Montoya presented the trade compliance plan he had developed with Robins. There were no objections to the plan and he began integrating the compliance programs in early 2015. Montoya was directed to work on integration with Defendant Robert Pereira, the Integration Plan Manager, and Robins provided Pereira with Montoya's pre-acquisition report on SCI.

Soon Montoya encountered difficulties with Sami Shemtov, the former president of SCI and president of the newly formed combined company. Montoya attempted to raise trade compliance issues he discovered during the integration and every time Shemtov and Pereira pushed back. As Montoya continued to protest, Berlin told him not to take any action until he and Robins could determine how to handle the concerns. Robins and Berlin ultimately decided

to pursue an illegal course of conduct, and Montoya insisted the company comply with the law. Pereira and Shemtov continued to criticize Montoya, and Berlin and Robins accused Montoya of conspiring against the company.

Montoya reported his poor treatment and the resistance to his compliance program to the General Counsel. He told the General Counsel that he was being harassed because he was objecting to the company's noncompliance with U.S. law. Montoya suggested that trade compliance be moved to the Law Department, but the General Counsel told him this was not possible due to budgetary constraints.

Montoya continued in his efforts to have the company implement trade compliance policies consistent with U.S. law, but Atkore ultimately terminated him on December 1, 2015. Berlin notified Montoya of his termination by email stating, "Atkore international [sic] has decided to eliminate the position of Senior Trade Compliance Specialist." Doc. 20 ¶ 105. After he was fired, Montoya notified the Department of Homeland Security of Atkore's violations.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads

4

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

I.  **Count I: Title VII Hostile Work Environment and Retaliation for Opposing Violations of Law**

Montoya alleges that Atkore subjected him to a hostile work environment and retaliation because he complained internally about Atkore's trade compliance policies. Specifically, he alleges that his insistence that Atkore follow federal laws was a substantial motivating factor in his termination in violation of Title VII. Title VII protects employees from discrimination on account of their "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). And Title VII also prohibits employers from retaliating against employees for "'opposing any practice made an unlawful employment practice by' Title VII." *Hamm v. Weyauwega Milk Prod., Inc.*, 332 F.3d 1058, 1066 (7th Cir. 2003) (quoting 42 U.S.C. § 2000e-3(a)), *overruled in part on other grounds by Hively v. Ivy Tech Cmty. Coll. of Indiana*, 853 F.3d 339 (7th Cir. 2017).

The First Amended Complaint ("FAC") and Montoya's response to Atkore's motion to dismiss make it abundantly clear that the basis for Montoya's Title VII claim in Count I is that he reported violations of law to his superiors and accordingly, they fired him. This sort of activity is not protected under Title VII. Title VII is not a catch-all whistleblower statute; its protections for retaliation are limited strictly to retaliation for opposing practices that Title VII makes unlawful. Trade compliance is not within the ambit of Title VII, so no matter how vociferously Montoya opposed trade compliance violations and not matter how severe the treatment he received as a result, he would still not state a claim under Title VII. *See Hamner v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 224 F.3d 701, 707 (7th Cir. 2000) ("If a plaintiff opposed conduct that was not proscribed by Title VII, no matter how frequent or severe, then his sincere

5

belief that he opposed an unlawful practice cannot be reasonable."), *overruled on other grounds by Hively*, 853 F.3d 339. Therefore the Court grants Atkore's motion to dismiss Count I.

## II. Count II: Title VII National Origin Discrimination and Retaliation

Montoya alleges that he faced discrimination and retaliation on the basis of his national origin in violation of Title VII. "[I]n order to prevent dismissal under Rule 12(b)(6), a complaint alleging . . . discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her [membership in a protected class]." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). Montoya alleges that his national origin is Hispanic and that Defendant Steve Robins would mock his accent at team meetings. He does not allege that he was fired because he is Hispanic. Neither the FAC nor Montoya's response to the motion to dismiss identifies what, if any, adverse employment action he suffered because of his national origin. In fact, he clearly states that the adverse employment action he suffered—termination—was because of his complaints about Atkore's violations of federal customs laws. Thus, because he does not allege that he experienced an adverse employment action due to his national origin, his discrimination claim fails.

To state a retaliation claim under Title VII Montoya must allege that he engaged in an action protected under Title VII and that Atkore retaliated against him because of this protected activity. 42 U.S.C. § 2000e–3(a); *see Hamner*, 224 F.3d at 707. Montoya does not allege that he reported or protested the mocking of his accent, nor does he allege he experienced any adverse employment action as a result of his objecting to this treatment. Therefore, he has failed to state a claim for retaliation as well. Furthermore, in his response Montoya does not present any argument regarding his retaliation claim, effectively abandoning it. *See A.C. v. Standard Bank & Tr.Co.*, No. 15 C 7693, 2016 WL 1407712, at *2 (N.D. Ill. Apr. 11, 2016) ("A party's failure to

6

respond to arguments the opposing party makes in a motion to dismiss operates as a waiver or forfeiture of the claim and an abandonment of any argument against dismissing the claim."). Even if he had not abandoned this claim, the allegations in the FAC are insufficient to survive the motion to dismiss. Therefore, the Court grants Atkore's motion to dismiss Count II.

## III. Count VI: Illinois Whistleblower Act

Montoya brings a claim against all Defendants for retaliation under the IWA. A plaintiff may bring suit under the IWA if he experiences retaliation for either reporting illegal activity to a government agency, 740 Ill. Comp. Stat. 174/15 ("Section 15")[2], or refusing to take part in illegal activity, 740 Ill. Comp. Stat. 174/20 ("Section 20"). Montoya purports to bring his claim for violation of Section 20, but this claim fails because he never alleges that he refused to take part in the alleged illegal activity, only that he complained of it to his superiors.

To state a claim under Section 20, Montoya must allege facts that if true, plausibly show that he refused to take part in some illegal activity on the part of his employer and that he was retaliated against because of this refusal. *Sardiga v. N. Tr. Co.*, 948 N.E.2d 652, 657, 409 Ill. App. 3d 56, 350 Ill. Dec. 372 (2011) (citing 740 Ill. Comp. Stat. 174/20). Complaining to one's superiors about an action is not the same thing as refusing to participate in that action. *Id.* ("'[R]efusing' means refusing; it does not mean 'complaining' or 'questioning.'"). To refuse to participate, the plaintiff must have had the opportunity to participate and rejected that opportunity. *Id.* Montoya makes no allegation that he had the opportunity to participate and rejected it, he only alleges that he complained about illegal actions others at the company were

---

[2] Montoya does not bring a claim under Section 15. Although he did report the alleged illegal activity to the Department of Homeland Security, he concedes in his response to the motion to dismiss that he did not do so until after Atkore terminated him.

7

doing; this does not fall under Section 20.[3] Therefore, the Court grants Defendants motions to dismiss the IWA claim.

## IV. Intentional Infliction of Emotional Distress

Montoya brings a claim for IIED against all Defendants. To recover for IIED, Montoya must allege that "(1) defendants' conduct was extreme and outrageous; (2) defendants either intended to inflict severe emotional distress or knew that there was a high probability that their conduct would do so; and (3) defendants' conduct actually caused severe emotional distress." *Lifton v. Bd. of Educ. of City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005) (quoting *Thomas v. Fuerst*, 803 N.E.2d 619, 625, 345 Ill. App. 3d 929, 281 Ill. Dec. 215 (2004)).

It is not clear what specific actions Montoya believes constitute the extreme and outrageous conduct on the part of Defendants, but as best the Court can surmise, it is the fact that Montoya was fired for complaining about the company's trade compliance issues. With regard to the Individual Defendants, Montoya does not make any allegation as to who was responsible for the decision to terminate him. At most, he states that Berlin informed him of his termination. Therefore, there is no allegation as to any of the Individual Defendants that they were responsible for the alleged extreme and outrageous decision to fire Montoya. The claim fails as to these Defendants on this basis alone.

Even if Montoya did sufficiently allege extreme and outrageous conduct on the part of Defendants, he has completely failed to allege that he actually experienced severe emotional distress. The FAC contains only the conclusory allegations that "David Montoya has suffered

---

[3] That fact that Montoya's complaints are not protected by the IWA does not necessarily mean he is without recourse. He may well have a common law claim for retaliatory discharge. *See Callahan v. Edgewater Care & Rehab. Ctr., Inc.*, 872 N.E.2d 551, 554, 374 Ill. App. 3d 630, 313 Ill. Dec. 568 (2007) ("The fact that individuals discharged in retaliation for reporting illegal activities to their superiors have no right of action under the Whistleblower Act does not compel the conclusion that they have no right of action at all."). However, he did not bring a claim under the common law, so the Court does not address this hypothetical claim further.

8

and continues to suffer from severe emotional distress from the injuries caused to him by the violation of his constitutional rights and his employment termination as set forth above." Doc. 20 ¶ 139.  Such a conclusory allegation is not sufficient to survive a motion to dismiss.  *Mnyofu v. Bd. of Educ. of Rich Twp. High Sch. Dist. 227*, 832 F. Supp. 2d 940, 950 (N.D. Ill. 2011) (conclusory allegations that plaintiff suffered severe emotional distress not sufficient to survive motion to dismiss); *Nardella v. Leyden High Sch. Dist. 212*, No. 15-CV-4885, 2017 WL 1806589, at *5 (N.D. Ill. May 5, 2017) (same); *McIntosh v. Kelly*, No. 16-CV-01018-SMY, 2017 WL 633810, at *7 (S.D. Ill. Feb. 16, 2017) (same).  Therefore, the Court grants the motions to dismiss the IIED claim.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motions to dismiss [23, 26] Counts I, II, IV, and V without prejudice.

Dated: March 2, 2018

_____
SARA L. ELLIS
United States District Judge