# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DAVID MONTOYA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 17 C 3628 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| ATKORE INTERNATIONAL, INC., | ) |
| NORMAN MACDONALD, STEVE ROBINS, | ) |
| RODNEY BERLIN, SAMI SHEMTOV, and | ) |
| ROBERT PEREIRA, | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff David Montoya worked for Defendant Atkore International, Inc. ("Atkore") as a Senior Trade Compliance Specialist from July 2012 until Atkore terminated him in December 2015. Following dismissal of his First Amended Complaint, Montoya then filed a Second Amended Complaint ("SAC") against Atkore and Individual Defendants Norman MacDonald, Steve Robins, Rodney Berlin, Sami Shemtov, and Robert Pereira (collectively, "Defendants") alleging that Atkore violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, when it fired him (Count I) and that all Defendants retaliated against him in violation of the Illinois Whistleblower Act ("IWA"), 740 Ill. Comp. Stat. 174/20, because he refused to take part in illegal activity (Count II). Finally, Montoya brings a claim for Intentional Infliction of Emotional Distress ("IIED") under Illinois common law against all Defendants, alleging that their actions caused him severe emotional distress (Count III). Atkore and the Individual Defendants move to dismiss [44,45] the SAC in its entirety. The Court dismisses Count I as to all Defendants because Montoya does not allege any facts to support his ADEA claim other than he was fired and replaced by a younger employee. The Court dismisses Count II because Montoya does not identify an illegal activity in which he refused to participate; he only alleges that he complained to his superiors about the

violations of federal law. Additionally, he alleges that he reported Atkore's illegal activity to the Department of Homeland Security, but he does not allege that Defendants retaliated against him for doing so. Finally, the Court dismisses the IIED claim because Montoya has not alleged conduct on behalf of Defendants that is extreme and outrageous that reasonably could have caused him severe emotional distress. Because the Court has previously dismissed Montoya's IIED and IWA claims, and the SAC does not successfully overcome the deficiencies the Court previously noted with these claims, the Court finds that additional opportunity to amend would be futile. Therefore, the Court grants Defendants motions to dismiss Counts II and III with prejudice. However, the Court has not previously dismissed Montoya's ADEA claim and he may still be able to amend to state a claim with respect to that claim such that dismissal with prejudice would be premature. Thus, the Court dismisses Count I without prejudice.

## BACKGROUND[1]

Montoya is the former Senior Trade Compliance Specialist for Atkore. He held this position from September 2012 until his termination in December 2015.

Even before joining Atkore officially, Atkore tasked Montoya with addressing trade compliance issues it had identified with a company it had recently acquired called FlexHead Industries, Inc. ("FlexHead"). He began a follow up review of a compliance gap analysis conducted by RoybalGlobal, a trade compliance consulting firm. When Montoya started at Atkore, he continued this review and reported to Defendant Steve Robins. Shortly after he officially started, Montoya traveled to FlexHead headquarters in Massachusetts and met with its president, Defendant Norman MacDonald. MacDonald reacted poorly to Montoya's visit and

---

[1] The facts in the background section are taken from the SAC and are presumed true for the purpose of resolving Defendants' motions to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

complained to Atkore's CEO and to Robins, accusing Montoya of some sort of conspiracy relating to customs irregularities Montoya found at FlexHead.

After this visit, Montoya presented his opinions regarding trade compliance to the Atkore management team. He suggested the company make a "prior disclosure" to Customs and Border Protection ("CBP"). A few weeks later, FlexHead received a request for information from CBP. Following this request, MacDonald continued his hostility toward Montoya. MacDonald requested RoybalGlobal conduct a follow-on review to support his decisions in the trade compliance arena. RoybalGlobal conducted the review, but Montoya has never seen the report.

Around this same time, Montoya asked Atkore's legal department to obtain an outside opinion on FlexHead's trade compliance from an independent law firm. In response, Atkore hired Drinker Biddle & Reath ("DBR") to review the issue. DBR reached the same conclusions as Montoya. As a result, Atkore filed the prior disclosure with CBP that Montoya requested. CBP has since closed this investigation with a finding of some violations by Atkore.

In April 2014, Montoya's direct supervisor left Atkore. Montoya reported directly to Robins from this time until November 2014 when Atkore hired Defendant Rodney Berlin as the Senior Manager-Corporate Logistics and Trade Compliance. In April 2014, Atkore gave Montoya the responsibility for the pre-acquisition review of Steel Components, Inc. ("SCI"), a company Atkore was seeking to acquire. Montoya identified several concerns about SCI and reported them to Robins. Robins replied that the issues were not a concern because Atkore was only acquiring the assets of SCI, not the company itself. Montoya objected to this strategy and advocated that Atkore fix all the issues with SCI prior to the acquisition. Atkore management rebuffed this suggestion. The acquisition occurred on November 20, 2014.

Following the acquisition, Atkore held weekly meetings to coordinate the integration of SCI into Atkore.  During these meetings Montoya presented the trade compliance plan he had developed with Robins.  There were no objections to the plan and he began integrating the compliance programs in early 2015.  Atkore directed Montoya to work on integration with Defendant Robert Pereira, the Integration Plan Manager, and Robins provided Pereira with Montoya's pre-acquisition report on SCI.

Soon Montoya encountered difficulties with Sami Shemtov, the former president of SCI and president of the newly formed combined company.  Montoya attempted to raise trade compliance issues he encountered in the integration and every time Shemtov and Pereira pushed back.  For example, Montoya discovered that SCI had improperly included certain charges on import invoices from China and claimed these charges as deductions to avoid paying duties on the charges.

Shemtov also complained to Pereira that Montoya was making changes to the company's tariff harmonization codes without authorization.  Montoya continued to push the need for these changes, but Berlin told him not to do anything about it until he and Robins could decide what to do.  Robins and Berlin subsequently approved of a process that was not approved by U.S. customs law.  When Montoya complained about this, Pereira told him:

> Let's be clear that the role here is to advise on
> opportunities and for assistance where requested.  It is not for you
> to be changing anything on your own without review and
> discussion by Sami or me.  Your input and expertise is welcomed
> but you should be working through Sami, Frances and me.

Doc. 39 at 16.

Berlin subsequently noted in Montoya's performance review that "[Montoya] takes actions which favor the Federal Government's position rather than that of Atkore." *Id.*

Montoya reported his poor treatment and the resistance to his compliance program to the General Counsel.  He told the General Counsel that he was being harassed because of his objections to the company's noncompliance with U.S. law.  Montoya suggested that Atkore move trade compliance to the Law Department, but the General Counsel told him this was not possible due to budgetary constraints.

Montoya continued in his efforts to have the company implement trade compliance policies consistent with U.S. law, but Atkore ultimately terminated him on December 1, 2015. Berlin notified him of his termination via email, stating that "Atkore international [sic] has decided to eliminate the position of Senior Trade Compliance Specialist."  Doc. 39 at 20.  After Atkore fired him, Montoya notified the Department of Homeland Security of Atkore's violations.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits.  Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).  In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor.  *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).  To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L.Ed. 2d 929 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

# ANALYSIS

## I. Count I: Age Discrimination Claim

Montoya, who was born in 1957, argues that when Atkore terminated him, it violated the ADEA. To state a claim for a violation of the ADEA, a plaintiff only need allege that he suffered an adverse employment action because of his age. *Levin v. Madigan*, 697 F. Supp. 2d 958, 966 (N.D. Ill. 2010) (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)). But here, Montoya has not even done that. He does allege that he was terminated, but at no point does he allege, even in a conclusory fashion, that his termination was based on his age. The only reference to the alleged motivation for his termination in the SAC is in paragraph 110 which states, "Montoya's insistence that appropriate Federal Customs Laws must be followed was a substantial or motivating factor in the adverse employment decision against him and by the Individually Named Defendants and Atkore International, Inc." Doc. 39 at 20. Furthermore, there are no allegations whatsoever that support the contention that Atkore terminated him because of his age. Montoya does not allege anyone at Atkore even commented on his age. Therefore, Montoya has failed to state a claim for age discrimination under the ADEA. *See Barnes v. Solo Cup Co.*, No. 13 C 03159, 2013 WL 2156054, at *2 (N.D. Ill. May 16, 2013) (dismissing employment discrimination claim where plaintiff did not allege any facts to support an inference that the employment decision was motivated by racial animus).

## II. Count II: IWA Retaliation Claim

Montoya brings a claim against all Defendants for retaliation under the IWA. A plaintiff may bring suit under the IWA if he experiences retaliation for either reporting illegal activity to a government agency, 740 Ill. Comp. Stat. 174/15 ("Section 15"),[2] or refusing to take part in

---

[2] Montoya does not bring a claim under Section 15. He did report the alleged illegal activity to the Department of Homeland Security, but he conceded in his response to the prior motion to dismiss that he

illegal activity, 740 Ill. Comp. Stat. 174/20 ("Section 20"). Montoya purports to bring his claim for violation of Section 20, but this claim fails because his allegations do not support his assertion that he refused to take part in the alleged illegal activity, only that he complained of it to his superiors.

To state a claim under Section 20, Montoya must allege facts that, if true, plausibly show that he refused to take part in some illegal activity on the part of his employer and his employer retaliated against him because of this refusal. *Sardiga v. N. Tr. Co.*, 948 N.E.2d 652, 657, 409 Ill. App. 3d 56, 350 Ill. Dec. 372 (2011) (citing 740 Ill. Comp. Stat. 174/20). Complaining to one's superiors about an action is not the same thing as refusing to participate in that action. *Id.* ("'[R]efusing' means refusing; it does not mean 'complaining' or 'questioning.'"). To refuse to participate, the plaintiff must have had the opportunity to participate and rejected that opportunity. *Id.*

Montoya argues that he refused to participate in illegal activity on several occasions. First, Montoya points to his disagreement with MacDonald during the gap analysis review of FlexHead. Montoya says that because his refusal "to have any part in this improper and illegal classification . . . [he] was fired." Doc. 52 at 10. But that situation did not involve anyone asking him to do anything illegal, and it was resolved after Atkore hired outside counsel at Montoya's suggestion to review the situation. Therefore, this incident did not involve Montoya refusing to take part in illegal activity.

Next Montoya points to his pre-acquisition review of SCI. However, no one requested that Montoya engage in any illegal activity in relation to the acquisition of SCI. He performed a pre-acquisition review and made recommendations about what issues SCI should remediate

---

did not do so until after Atkore terminated him. He is not so forthcoming in his response to this round of motions, but he also does not advance any arguments related to Section 15.

before Atkore should complete the merger.  Robins and Berlin told him the merger was going forward regardless of his concerns.  After the merger, Montoya discovered SCI had improperly avoided paying certain duties.  He informed some of the Individual Defendants of this issue.  It is not clear what happened with this information.  Regardless, Montoya does not allege that anyone asked him to do anything illegal or that he refused such a request.  His protests of potentially illegal actions through internal channels do not constitute refusal under the IWA.

In the SAC, Montoya identifies other times he identified illegal activity and reported it up the chain, only to have Aktore's management ignore these reports.  But again, none of these examples involved someone telling him to sweep something under the rug or look the other way.  Montoya does not identify a single request for him to participate in illegal activity in the SAC.  Without such a request or opportunity, there can be no refusal under the IWA.  Therefore, he fails to state a claim under Section 20 of the IWA.

Montoya also argues that he should be protected from retaliation as an internal whistleblower.  In support of this argument, he points to *Neal v. Honeywell, Inc.*, 826 F. Supp. 266, 270 (N.D. Ill. 1993), in which the court held that the whistleblower protections under the False Claims Act applied to intracorporate whistleblowers.  Montoya does not explain why this case dealing with a different federal statute would be applicable here, and clearly, it is not.  In *Sardiga*, the court specifically stated that internal complaining about illegal activity is not covered by the IWA.  *Sardiga*, 409 Ill. App. 3d at 62 ("'[R]efusing' means refusing; it does not mean 'complaining' or 'questioning,' as Sardiga would have us believe.").  Thus, the IWA does not provide protection for intracorporate whistleblowers and this does not save his claim.

**III.     Count III:  Intentional Infliction of Emotional Distress**

Finally, Montoya brings a claim for IIED against all Defendants.  To recover for IIED, Montoya must allege that "(1) defendants' conduct was extreme and outrageous; (2) defendants either intended to inflict severe emotional distress or knew that there was a high probability that their conduct would do so; and (3) defendants' conduct actually caused severe emotional distress." *Lifton v. Bd. of Educ. of City of Chicago*, 416 F.3d 571, 579 (7th Cir. 2005) (quoting *Thomas v. Fuerst*, 803 N.E.2d 619, 625, 345 Ill. App. 3d 929, 281 Ill. Dec. 215 (2004)).

Montoya argues that Atkore and the Individual Defendants engaged in extreme and outrageous conduct causing him emotional distress when they "demand[ed] that Montoya falsify reports, and then retaliate[ed] against him for not cooperating."  Doc. 52 at 14.  Montoya cites to *Milton v. Illinois Bell Telephone Company*, 427 N.E.2d 829, 832, 101 Ill. App. 3d 75, 56 Ill. Dec. 497 (1981), for the proposition that these allegations suffice to state a claim for IIED.  However, Montoya's claim still fails because he has not actually alleged that anyone at Atkore demanded or asked that he falsify anything.  The SAC is replete with examples of individuals disagreeing, sometimes forcefully, with his recommendations and actions, but at no point does Montoya allege that someone asked him to lie in a report or any document.  In his responses to the motions to dismiss, Montoya does state that individuals demanded he falsify reports, but this is inconsistent with the SAC.  Normally, a plaintiff cannot amend a complaint with the brief opposing the defendant's motion to dismiss, *Agnew v. National Collegiate Athletic Association*, 683 F.3d 328, 348 (7th Cir. 2012), but a party may "elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings," *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012).  Because Montoya's unadorned assertion that Defendants

demanded he falsify reports is not consistent with any allegation in the SAC, the Court does not consider it here.

Thus, Montoya still fails to point to any conduct that rises to the level of extreme and outrageous necessary to state a claim for IIED. The conduct he alleges does not rise to the same level as that of the employer in *Milton* because Montoya does not allege in the SAC that anyone ever asked him to falsify a report or do anything else illegal. At most, Montoya alleges that individuals took issue with his approach toward implementing his trade compliance program and vociferously disagreed with him and chastised him. But these types of disagreements are not extreme or outrageous, and thus his claim fails. Because the Court has previously dismissed this claim, and Montoya has not been able to modify his complaint to allege extreme and outrageous conduct, the Court finds additional opportunity to amend would be futile and dismisses this claim with prejudice. *See Vargas–Harrison v. Racine Unified Sch. Dist.*, 272 F.3d 964, 974 (7th Cir. 2001) (Granting leave is futile if the amended complaint would be unable to survive a Rule 12(b)(6) motion to dismiss.).

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' motions to dismiss [44, 45]. The Court dismisses Count I without prejudice and dismisses Counts II and III with prejudice. Because the Court dismisses the only claims against Individual Defendants with prejudice, the Individual Defendants are terminated from this case.

Dated: October 16, 2018

SARA L. ELLIS
United States District Judge